## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Sullivan & Associates, LLC | § | |
| | § | |
| v | § | Civil Action No. 2:10-CV-02360-RMG |
| | § | |
| Jason Fabrizio, Individually, | § | |
| Eastwood Homes Coastal Carolina, LLC, | § | |
| Eastwood Construction Company, LLC, | § | **JURY DEMANDED** |
| Eastwood Homes, Inc., and | § | |
| Eastwood Development Corporation | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

1.     Plaintiff, Sullivan & Associates, LLC (hereinafter, "Sullivan") files this complaint against Defendants, Jason Fabrizio, Individually ("Fabrizio"), Eastwood Homes Coastal Carolina, LLC. ("EHomesCC"),  Eastwood Construction Company, LLC. ("ECon"), Eastwood Homes, Inc. ("EHomes"), and Eastwood Development Corporation ("EDev"), and shows:

## JURISDICTION/VENUE

2.     This claim arises under the copyright laws of the United States, 17 U.S.C. 101 *et. seq.*, (hereinafter the Copyright Act), and one or more of the acts of infringement occurred within the District of South Carolina; therefore, jurisdiction and venue are proper where this complaint was filed.

3     Subject matter and personal jurisdiction is vested in this Court pursuant to 28 U.S.C. 1338. This Court's diversity jurisdiction is invoked pursuant to 28 U.S.C. §

1

1332(a)(1).  Additionally, this Court has subject matter jurisdiction under 28 U.S.C. 1331

inasmuch as this claim arises under the copyright laws of the United States. Venue in this

judicial district is proper pursuant to 28 U.S.C. 1400(a) and 28 U.S.C. 1391(b) and (c).

## THE PARTIES

4.    **Sullivan** is a Tennessee Limited Liability Company engaged in the

business of the designing, publishing and licensing of architectural plans.

5.    **Fabrizio** is a resident of South Carolina, and will receive actual notice of

this suit by service of same upon him at his office, 1042 Lagrand Blvd., Suite 4,

Charleston, SC 29492.

6.    **EhomesCC** is a South Carolina Limited Liability Company with its

principal place of business in Myrtle Beach, South Carolina, and will receive actual

notice of this suit by service of same upon its registered agent, Jason Fabrizio, 104

Legrand Blvd., Suite 4, Charleston, SC 29492.

7.    **ECon** is a North Carolina Limited Liability Company with its principal

place of business in Charlotte, NC, Econ is registerd to do business in South Carolina as a

Foreign Limited Liability Company, and will receive actual notice of this suit by service

of same upon its registered agent, Chris Day, 1200 Woodruff Road, STE H-20,

Greenville, SC 29607.

8.    **EHomes** is a North Carolina corporation with its principal place of

business in Charlotte, NC, and will receive actual notice of this suit by service of same

2

upon its registered agent, Joseph K. Stewart, at 2857 Westport Road, Charlotte, NC 28208.

9.    **EDev** is a North Carolina corporation with its principal place of business in Charlotte, NC, and will receive actual notice of this suit by service of same upon its registered agent, Jason Fabrizio, at 1042 Lagrand Blvd., Suite 4, Charleston, SC 29492.

## INTRODUCTORY FACTS

10.    Sullivan creates, publishes and sells architectural house designs and plans, and is the sole owner and proprietor of all right, title and interest in and to the copyrights in certain house plans/designs published in various books, handouts, pamphlets and on internet web sites.

11.    Sullivan has complied in all respects with Title 17 of the United States Code (Copyright Act of 1976), The Architectural Works Copyright Protection Act of 1990, The Digital Millennium Copyright Act, and all other United States laws governing copyrights, and possesses the exclusive rights and privileges in and to the copyrights to the house plans described below.

12.    Sullivan owns certain rights in and to various Architectural Works Copyright Registration Numbers, but in particular numbers VA 0001697411 ("The Chesterfield"), VA 0001697417 ("The Chelsey"), VA 0001697423 ("The Chamberlain") (**Exhibits 1 – 3, Registrations**).

3

13.    Sullivan's copyrights in the above-described works are presently valid and subsisting, were valid and subsisting from the moment of their creation, and all conditions precedent to the filing of this suit have occurred.

## CONTEXTUAL FACTS

14.    On or about November 15, 2007, Sullivan first became aware that Defendant had violated copyrights in and to its architectural works above-described by building an as yet undetermined number of houses in and around Hanahan, South Carolina.    Upon learning of these infringements, Defendants were sent various correspondence putting them on notice of the infringement(s), and to which they responded **(Exhibits 4 - 6).**  Attempts to resolve the matter before filing suit failed.

## CAUSES OF ACTION – NON-WILLFUL INFRINGEMENT(S)
## COUNT ONE

15.    Upon information and belief, Defendants, without knowledge or intent, infringed one or more of Sullivan's copyrights by scanning, copying, and/or reproducing unauthorized copies thereof within the United States in violation of 17 U.S.C. §106(1).

## COUNT TWO

16.    Upon information and belief, Defendants without knowledge or intent, violated §106(2) by creating one or more derivative works of Sullivan's copyrighted works.

4

## COUNT THREE

17.    Upon information and belief, Defendants, without knowledge or intent, infringed Sullivan's copyrights by constructing houses, in violation of 17 U.S.C. §101.

## COUNT FOUR

18.    Upon information and belief, Defendants' advertising, marketing and sale of one or more of the infringing structures constituted unlawful distribution, and a non-willful violation of 17 U.S.C. §106(3).

## *ALTERNATIVE* CAUSES OF ACTION – WILLFUL INFRINGEMENT(S)
## COUNT FIVE

19.    Upon information and belief, Defendants, willfully infringed one or more of Sullivan's copyrights by scanning, copying, and/or reproducing unauthorized copies thereof within the United States in violation of 17 U.S.C. §106(1).

## COUNT SIX

20.    Upon information and belief, Defendants willfully violated 17 U.S.C. §106(2) by creating one or more derivative works of Sullivan's copyrighted works.

## COUNT SEVEN

21.    Upon information and belief, Defendants willfully infringed Sullivan's copyrights by constructing houses, in violation of 17 U.S.C. §101.

## COUNT EIGHT

22.    Upon information and belief, Defendants' advertising, marketing and sale of one or more of the infringing structures constituted unlawful distribution, and a willful violation of 17 U.S.C. §106(3).

### ALTERNATIVE CAUSES OF ACTION – DMCA VIOLATIONS
### COUNT NINE

23.    Upon information and belief, one or more of the Defendants violated the 17 USCS §1202 *et seq.*, the Digital Millennium Copyright Act ("DMCA"), by removing Plaintiff's copyright management information.

## ACTUAL DAMAGES

24.    As a result of Defendants' above-described acts of copyright infringement, Sullivan has sustained lost profits and/or lost licensing revenue.

## RELIEF REQUESTED

25.    Sullivan is entitled and seeks to recover its actual damages.

26.    Sullivan demands an accounting by Defendants of their activities in connection with their infringements of the copyrights in and to the above-described works, as well as of their gross profits attributable to the infringement(s).

27.    Sullivan seeks recovery of all direct and indirect profits attributable to Defendants' infringements, including but not limited to such derived from such things as real estate sales and land-development activities in subdivisions where infringing structures were built, as well as all indirect profits from the construction, advertising,

6

promotion, marketing, and sale of non-infringing structures attributable to Defendants' infringements.

28.    Sullivan also seeks to recover the professional fees and expenses of all expert witnesses it retains in the prosecution of this action.

## INJUNCTIVE RELIEF REQUESTED

29.    Sullivan requests that the Defendants, their agents, employees and/or servants, be enjoined *pendente lite* and permanently from infringing Sullivan's copyrights in any manner whatsoever, including advertising, marketing, construction, and sale of infringing structures, and from publishing through any visual media, and from selling, marketing or otherwise distributing the said plans and/or derivatives of them;

30.    That Defendants be required to deliver-up, under oath, for impounding during the pendency of this action, and for destruction thereafter, all house plans and elevations which infringe Sullivan's copyrights, including all photographs, blueprints, film negatives, magnetic tapes, digitally-scanned and/or stored images, and all other articles by means of which such infringing copies may be reproduced, which are in the possession of, or under the direct or indirect control of the Defendants;

31.    That, upon a finding of infringement, the Court declare that the first sale doctrine requires destruction, or alternatively that the current owner(s) of all infringing structures be permanently enjoined from leasing, renting, selling and/or otherwise placing same into the stream of commerce.

## PRAYER FOR RELIEF

32.    That Defendants be required to pay over to Sullivan its actual damages sustained, and in addition, all direct and indirect profits of Defendants attributable to the infringements which are not taken into account in computing Sullivan's actual damages incurred as a result of Defendants' copyright infringements described herein;

a.    That there be an accounting of all gains, profits and advantages derived by Defendants as a result of the non-willful and/or willful, unlawful acts of copyright infringements above-described;

b.    That pursuant to 17 USCS § 1203 (c)(3), each Defendant who violated the DMCA pay statutory damages of between $2,500 and $25,000 to Plaintiff for each such act;

c.    That pursuant to 17 USCS § 1203 (b)(4) and (5) Defendants who violated the DMCA pay Plaintiff's costs and attorney's fees;

d.    That Defendant pay to Sullivan its costs;  and

e.    That Sullivan have such other and further relief as this court shall deem just and proper.

**PLAINTIFF, SULLIVAN & ASSOCIATES, LLC, DEMANDS TRIAL BY JURY.**

Respectfully submitted,


By:    s/Samuel K. Allen
       Samuel K. Allen
       Federal Bar No. 7744

8

49 Immigration Street
Suite 100
Charleston, SC  29403
843.722.8070
843.722.9881 fax

ATTORNEY FOR PLAINTIFF,
Sullivan & Associates, LLC

Charleston, SC
November 29, 2010

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-697-411

**Effective date of
registration:**

December 30, 2009

---

## Title

**Title of Work:** 1124-447-624-GP Chesterfield

## Completion/ Publication

**Year of Completion:** 2003

**Date of 1st Publication:** September 22, 2003    **Nation of 1st Publication:** United States

## Author

**Author:** Sullivan & Associates

**Author Created:** architectural work

**Work made for hire:** Yes

**Citizen of:** United States    **Domiciled in:** United States

**Year Born:** 1948

## Copyright claimant

**Copyright Claimant:** Sullivan & Associates

251 Germantown Bend Cv, Cordova, TN, 38018, United States

## Rights and Permissions

**Name:** Thomas Marshall Sullivan

**Email:** sullivanhomeplans@comcast.net    **Telephone:** 901-755-8840

**Address:** 251 Germantown Bend Cv

Cordova, TN 38018

## Certification

**Name:** Steve Vatter

**Date:** December 30, 2009

---

**EXHIBIT 1**

Page 1 of 2

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-697-423

**Effective date of
registration:**

December 30, 2009

---

## Title

**Title of Work:** 1333-523-IV Chelsey

## Completion/ Publication

**Year of Completion:** 2003

**Date of 1st Publication:** September 11, 2003    **Nation of 1st Publication:** United States

## Author

**Author:** Sullivan & Associates

**Author Created:** architectural work

**Citizen of:** United States    **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Sullivan & Associates

251 Germantown Bend Cv, Cordova, TN, 38018, United States

## Rights and Permissions

**Name:** Thomas Marshall Sullivan

**Email:** sullivanhomeplans@comcast.net    **Telephone:** 901-755-8840

**Address:** 251 Germantown Bend Cv

Cordova, TN 38018

## Certification

**Name:** Steve Vatter

**Date:** December 30, 2009

**Correspondence:** Yes

EXHIBIT 2

Page 1 of 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-697-417

**Effective date of
registration:**

December 30, 2009

---

## Title

**Title of Work:** 926-905-777-IV Chamberlain

## Completion/ Publication

**Year of Completion:** 2003

**Date of 1st Publication:** November 26, 2003       **Nation of 1st Publication:** United States

## Author

■       **Author:** Sullivan & Associates

**Author Created:** architectural work

**Work made for hire:** Yes

**Citizen of:** United States              **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Sullivan & Associates

251 Germantown Bend Cv, Cordova, TN, 38018, United States

## Rights and Permissions

**Name:** Thomas Marshall Sullivan

**Email:** sullivanhomeplans@comcast.net          **Telephone:** 901-755-8840

**Address:** 251 Germantown Bend Cv

Cordova, TN 38018

## Certification

**Name:** Steve Vatter

**Date:** December 30, 2009

---

**Correspondence:** Yes

## EXHIBIT 3

Page 1 of 1

# Sullivan & Associates

7031 Highway 64 Oakland, TN 38060
Phone: 901-466-9918                    Fax: 901-466-9919

**Rule 408 Settlement Negotiations – Inadmissible**

February 4, 2009

Jason Fabrizio
Eastwood Homes
6650 Rivers Avenue
Charleston, SC 29406

Joe Stewart
Eastwood Homes
2857 Westport Road
Charlotte, NC 28208

Re: "The Summerall" (Lot 6), "The Moultrie" (Lots 7,11,14,18,47), "The Sumter" (Lots 4,10,12,15, 59) – South Cove at Tanner Plantation

Dear Mr. Stewart:

Professional building designers work hard to produce innovative, sellable designs for builders to profit from.  We take pride in the services that our industry has been able to provide to home building professionals.  We have a fair and inexpensive home design purchase and reuse program that has proven successful throughout the years.  Because our prices are so inexpensive, each home designer relies heavily on every use and reuse fee for our income.

For the convenience of the consuming public, Sullivan & Associates is happy to provide plans for sale through various Internet websites and publications.  In no way are these publications and plan images on the "web" provided as a means to copy, redraw, redesign, or build from. On 02/23/04 you purchased from Sullivan & Associates one review set of plan "1333-523-IV" and one review set of plan "0926-720-780-IV". The review set purchase is strictly to allow for estimating and study purposes only. A minimum 5 set purchase is required to receive a license to build a copyright Sullivan & Associates plan. It has been recently discovered that you redrew and constructed, in South Cove at Tanner Plantation in Charleston, SC, 3 copyrighted designs owned by Sullivan & Associates, Your designs are an infringement on Sullivan & Associates copyrighted designs "1333-523-IV" (which you've constructed 1 time at the location listed above), design "1124-447-624-GP" (constructed 5 times at above listed locations), and design "0926-720-780-IV" (also constructed 5 times at above listed locations). Each individual act of copying, redrawing, disseminating, and constructing copyrighted architectural works, without the permission of the copyright holding designer, are all infringements of U.S. Copyright Law. Even significant changes to the original work does not eliminate copyrights

Since fees were not paid prior to the start of construction, we are contacting you regarding this unauthorized use. We demand that you immediately cease and desist from the use and promotion of Sullivan & Associates copyrighted material. Do not destroy any advertising in which Sullivan & Associates copyrighted designs appeared, and/or construction documents and/or electronic data depicting the likeness of Sullivan & Associates products. Instead, please immediately relinquish these materials to us at this

"Remember, to avoid penalties, all fees must be paid prior to securing permits."     EXHIBIT 4

# Sullivan & Associates

7031 Highway 64 Oakland, TN 38060
Phone: 901-466-9918                    Fax: 901-466-9919

time. In addition, do not purchase or enter into negotiations to purchase any of Sullivan & Associates products prior to resolution of this matter.

Typically, the purchase of a "CAD " set entitles you to make modifications or redraw the plan and use one time for construction. The cost of a  CAD version of plan "1333-523-IV" is $907.00. The cost of a CAD version of plan "1124-447-624-GP" is $1122.50 and the cost of the CAD version of plan "0926-720-780-IV" is $1224.00. Many building departments have a policy where permit fees are doubled if construction begins prior to obtaining permits. Instead of filing lawsuits to protect their copyrights, home designers across the nation have adopted that same policy and charge double the CAD rate when plans are copied and or used for construction without permission.  At this time your fee owed for 1 use of plan"1333-523-IV" copyrighted design on the above referenced lot is $1814.00.00 ($907.00 X 2).  The fee owed for 5 uses of plan "1124-447-624-GP" copyrighted design on the above referenced lots is $11,225.00 (1122.50 x 2 x 5 uses). And the fee owed for 5 uses of plan "0926-720-780-IV" copyrighted design on the above referenced lots is $12,240.00 (1224.00 x 2 x 5 uses). The total owed for these 11 unpaid locations is $25,279.00.

Even though we have had cases involving very similar violations of Copyright Law and have been awarded as much as $150,000 per incident, in addition to attorney's fees, we would like to resolve this matter without involving our copyright attorney.  The amount of $25,279.00 is due in full before 02/14/2009. Time is of the essence. If the doubled fee is not paid in full by this date the total amount will double again immediately and our copyright attorney will be consulted.

If a party other than you purchased this plan for construction, or you feel this is an error on our part, please forward any documentation indicating such.  If you have used this or any other Sullivan & Associates plans in any other way without license, a retroactive license may be negotiated for these infringements at this time at the standard rate per use, if paid before we discover said additional infringements.

 I will anticipate your timely response and trust that this matter will be amicably resolved without further action on our part. However, If you force us to involve our copyright attorney we will seek the maximum amount allowed by law ($150,000) plus attorney's fees.

If you have any questions, please feel free to contact me.  Your prompt attention to this matter is greatly appreciated.

Sincerely,


Steve Vatter

SV/sc
Enclosures


Please make check payable to: Sullivan & Associates
                                                Attn: Copyright Dept.
                                                7031 Hwy 64
                                                Oakland, TN 38060


"Remember, to avoid penalties, all fees must be paid prior to securing permits."          EXHIBIT 4

# Sullivan & Associates

### 7031 Highway 64 Oakland, TN 38060
Phone: 901-466-9918          Fax: 901-466-9919

Rule 408 Settlement Negotiations – Inadmissible

March 19, 2009

Jason Fabrizio
Eastwood Homes
1042 LeGrand Blvd. Ste. 4
Charleston, SC 29406

Joe Stewart
Eastwood Homes
2857 Westport Road
Charlotte, NC 28208

Re: "The Summerall" (Lot 6), "The Moultrie" (Lots 7,11,14,18,47), "The Sumter" (Lots 4,10,12,15,59) – South Cove at Tanner Plantation

Dear Mr. Stewart:

On February 4, 2009, we sent you a letter regarding the unauthorized use of three of our copyrighted designs. Just as royalty fees are paid each time a copyrighted book or song sells, use fees are required each time architectural drawings are used to build from. Please understand that use fees and re-use license fees are our livelihood.

Please let it be known that we are not an attorney or a collection service, and as a professional home designer, we are attempting to resolve this matter on our own with the least amount of expense to you.

Your failure to respond to our first letter and our telephone calls has led me to believe that you have no interest in resolving this matter fairly, therefore we have doubled the amount due, as stated in the first letter. The amount due is now $50,558.00 for the usage fees on the above properties and for the extra time we were forced to spend on this matter.

I realize this is an unpleasant situation, but we must protect our livelihood. Time is of the essence. This is our second written correspondence concerning this matter. While it is not our desire to involve our attorney, if payment is not received by 5 PM, March 30, 2009, we will be forced to take action. In that event, all previous offers of settlement will be withdrawn and much harsher fees will be required through federal copyright courts.

If you have any questions or if I can assist in any way, please feel free to give me a call.

Sincerely,


Steve Vatter
SV/sc

Please make check payable to: Sullivan & Associates
Attn: Copyright Department
7031 Hwy 64
Oakland, TN 38060


"Remember, to avoid penalties, all fees must be paid prior to securing permits."

EXHIBIT 5



**Homebuilder of Integrity**

CORPORATE DIVISION

2857 Westport Road
Charlotte, NC  28208
Phone: 704-399-4663
Fax: 704-399-1127

May 21, 2009

Via Email to sullivanhomeplans@comcast.net
Sullivan Home Plans
Attn: Steve Vatter
7031 Highway 64
Oakland, TN 38060

      Re:    Eastwood Homes Home Plans (Summerall, Sumter, Moultrie)

Dear Mr. Vatter,

      Thank you for your patience as I fully investigated this matter, and the case law which controls my analysis as to your claims. In an effort to bring this matter to resolution I am highlighting the analysis regarding how I believe the risk for Eastwood should be calculated.

      I should note that recently, on December 22, 2008, the U.S. Court of Appeals for the Eleventh Circuit decided a case that is very similar to the claims you are making against Eastwood and is likely to be controlling. In *Intervest Construction, Inc. v. Canterbury Estate Homes, Inc.*, 554 F.2d 914 (11th Cir. 2008), the court considered a copyright claim brought concerning a 4-bedroom house plan. The putative owner of the copyright to the plan established that the defendant had access to the plaintiff's previously developed plan. A copy of that decision is attached for your and your attorney's review.

      The issue in the case was whether the floor plans were substantially similar such that Copyright liability would attach. The court attached to its opinion images of the floor plans. (See attached). On an overall basis, the plans were very similar. The defendant's plan presented what the plaintiff argued were only minor differences, such as the dimensions of certain rooms, where closets were situated, and the directionality of how doors opened and closed. The court stated that "[i]t is difficult for a juror, even properly instructed, to conclude, after looking at two works, that there is no infringement where, say, 90% of one is a copy of the other, but only 15% of the work as protectable expression has not been copied." *Id.* at 920.

      The United States Court of Appeals, however, wrote that many common portions of house plans are simply not protectable under the Copyright Act. "A review of the legislative history [of the Copyright Act] discloses that such 'individual standard features' include 'common windows, common doors, and other staple building components.'" *Id.* at 919. "[W]hile individual standard features and architectural elements classifiable as ideas or concepts are not themselves copyrightable, an architect's original combination or arrangement of such elements may be." *Id.* The Court further explained:

**EXHIBIT 6**

"Accordingly, any similarity comparison of the works at issue here must be accomplished at the level of protected expression – that is, the *arrangement* and *coordination* of those common elements ('selected' by the marketplace, i.e. rooms, windows, doors, and 'other staple building components'). In undertaking such a comparison it should be recalled that the copyright protection and compilation is 'thin.' *Feist*, 499 U.S. at 349, 111 S.Ct. at 1289. Moreover, as the Second Circuit has noted, the substantial similarity inquiry is 'narrowed' when dealing with a compilation. Thus, when viewed through the narrow lens of compilation analysis, only the original, and thus protected arrangement and coordination of spaces, elements, and other staple building components should be compared." *Id.*

The appellate court found that when conducting a substantial similarity comparison, the only items that are compared are those in which there is actual copyright protection. The fact that standard or stock elements or positioning of rooms were shared or similar does not constitute infringement. *Id.*

Turning to the actual plans in issue in the case, the appellate court noted the allegedly minor differences and said that they were enough to differentiate the plans. For example, some rooms had different square footages. The garages (which both shared) had entrances on different sides. One closet allegedly in common was a slightly different shape. Based upon these and other allegedly differences that the plaintiff argued were not significant given the overall similarity of the plans, the court found that there was no infringement. Not only were the floor plans in question not substantially similar, but the court found that no reasonable juror could have so found. The appellate court therefore affirmed the lower court's grant of summary judgment dismissing the claim.

In my opinion, and after multiple levels of review internally, when the Sullivan plans are compared against the Eastwood plans (the Sumter, Moultrie and Summerall), even more differences are seen than those presented in the *Intervest* case. I won't try to identify all of the differences, because they are so numerous for each of three plans, but the differences are very significant and include:

First, the Eastwood plans do not show garages, garage storage spaces or doorways to garages, whereas they are present on the Sullivan plans. These are very significant differences.

Second, the outside appearances and elevations of the homes constructed with these plans are different.

Third, as in *Intervest*, rooms have different dimensions.

Fourth, walls are located in different places, with different lengths and styles. As but one example, the Sumter does not have the same type of wall dividing the family room from the kitchen that appears in Sullivan Plan No. 1124. The Summerall has a slanted wall between the master bedroom and the great room, whereas the Sullivan Plan No. 1333 does not. Summerall Plan 926 has a great number of walls that the Moultrie lacks.

Fifth, rooms have been moved or are not present on one plan verses the next. For example, the bathrooms in the Moultrie and Plan 926 are in different locations, both on the first and second floors.

Sixth, closets are different and the washer/dryer areas are different. The Sumter has a wall enclosure and doors around its washer and dryer location, as well as a walled closet with a door, whereas Plan No. 1124 does not. The Sumter walk-in closet is significantly larger and differently configured than the master bath closet that is subdivided into a linen and a regular closet in Plan No. 1124.

EXHIBIT 6

Seventh, door positioning, entryways and walkways are different. For example, in Plan No. 1124, the utility space bears doors not only to a porch but also a storage area and garage. In contrast, the Sumter hallway simply has a porch at the back. The Moultrie's front entrance is on the same front wall as the front of the house and porch, whereas Plan 926's front entrance is some distance back from the front wall and the Family Room's front has extra doors opening onto the front porch.

In sum, an examination of the cited plans demonstrates that the plans are far more different than those differences in the Eleventh Circuit case that the court found sufficient to dismiss a copyright claim. Therefore, based on our understanding of this claim, and the limited risk attendant with it, Eastwood's position is that no settlement is appropriate at this time. Put another way, Eastwood's plans would be upheld by the Court in the same fashion as *Intervest*, so Eastwood's risk is perceived to be very limited.

Please let me know if you have any questions about this matter.

Sincerely,

Allen Nason
General Counsel

Encl.

Cc:    Jason Fabrizio, Charleston Division President
       Justin Myers, Corporate Vice President of Operations
       File

EXHIBIT 6

Westlaw.

554 F.3d 914                                                                 Page 1
554 F.3d 914, 2008 Copr.L.Dec. P 29,685, 89 U.S.P.Q.2d 1246, 21 Fla. L. Weekly Fed. C 1338
(Cite as: 554 F.3d 914)

C

United States Court of Appeals,
Eleventh Circuit.
INTERVEST CONSTRUCTION, INC., a Florida
corporation, Plaintiff-Appellant,
v.
CANTERBURY ESTATE HOMES, INC., a Florida
corporation, Defendant-Appellee.
No. 07-12596.

Dec. 22, 2008.

**Background:** Builder that held copyright in floor-plan for four-bedroom house brought infringement action against competitor. The United States District Court for the Middle District of Florida, No. 05-01853-CV-ORL-22-JGG, Anne C. Conway, Chief Judge, granted summary judgment for defendant, and plaintiff appealed.

**Holding:** The Court of Appeals, Birch, Circuit Judge, held that no reasonable, properly instructed jury could have found the floor-plans substantially similar.

Affirmed.

West Headnotes

**[1]** Copyrights and Intellectual Property 99 ☞6

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(A) Nature and Subject Matter
            99k3 Subjects of Copyright
                99k6 k. Pictorial, Graphic, and Sculptural Works. Most Cited Cases
While individual standard features and architectural elements classifiable as ideas or concepts are not themselves copyrightable as architectural works, an architect's original combination or arrangement of such elements may be. 17 U.S.C.A. § 101.

**[2]** Copyrights and Intellectual Property 99 ☞64

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(I) Infringement
            99I(I)1 What Constitutes Infringement
                99k64 k. Pictorial, Graphic, and Sculptural Works. Most Cited Cases
Any similarity comparison of architectural works must be accomplished at the level of protected expression, namely the arrangement and coordination of common elements. 17 U.S.C.A. § 101.

**[3]** Copyrights and Intellectual Property 99 ☞12(3)

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(A) Nature and Subject Matter
            99k12 Originality of Work; Creativity
                99k12(3) k. Compilations and Derivative Works; Copies and Reproductions. Most Cited Cases
The copyright protection in a compilation is "thin," and the substantial similarity inquiry is narrowed. 17 U.S.C.A. § 101.

**[4]** Copyrights and Intellectual Property 99 ☞64

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(I) Infringement
            99I(I)1 What Constitutes Infringement
                99k64 k. Pictorial, Graphic, and Sculptural Works. Most Cited Cases
In analyzing claim of infringement of copyrighted architectural work, only the original, and thus protected arrangement and coordination of spaces, elements, and other staple building components should be compared. 17 U.S.C.A. § 101.

**[5]** Copyrights and Intellectual Property 99 ☞89(2)

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(I) Infringement

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT 6

554 F.3d 914

Page 2

554 F.3d 914, 2008 Copr.L.Dec. P 29,685, 89 U.S.P.Q.2d 1246, 21 Fla. L. Weekly Fed. C 1338
**(Cite as: 554 F.3d 914)**

99I(J)2 Remedies
    99k72 Actions for Infringement
        99k89 Judgment
            99k89(2) k. Summary Judgment.
Most Cited Cases
When the crucial question in a copyright dispute in-
volving compilations is substantial similarity at the
level of protectable expression, it is often more relia-
bly and accurately resolved in a summary judgment
proceeding; this is so because a judge is better able to
separate original expression from the non-original
elements of a work where the copying of the latter is
not protectable and the copying of the former is pro-
tectable, and the judge understands the concept of the
idea/expression dichotomy and how it should be ap-
plied in the context of the works before him. 17
U.S.C.A. § 101.

**[6] Copyrights and Intellectual Property 99**
**☞4.5**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(A) Nature and Subject Matter
            99k3 Subjects of Copyright
                99k4.5 k. Ideas and Concepts in Gen-
eral. Most Cited Cases
The distinction between protectable expression of
ideas and non-protectable ideas, known as the
"idea/expression dichotomy," can be difficult to ap-
ply, as there is no bright line separating the ideas
conveyed in a work from the specific expression of
those ideas. 17 U.S.C.A. § 101.

**[7] Copyrights and Intellectual Property 99**
**☞88**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(I) Infringement
            99I(I)2 Remedies
                99k72 Actions for Infringement
                    99k88 k. Trial. Most Cited Cases
Because a judge will more readily understand that not
all copying is infringement, particularly in the con-
text of works that are compilations, the "substantial-
similarity" test is more often correctly administered
by a judge rather than a jury, even one provided
proper instruction; the reason for this is that the abil-
ity to separate protectable expression from non-
protectable expression is, in reality, a question of law

or, at the very least, a mixed question of law and fact.
17 U.S.C.A. § 101.

**[8] Copyrights and Intellectual Property 99**
**☞12(1)**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(A) Nature and Subject Matter
            99k12 Originality of Work; Creativity
                99k12(1) k. In General. Most Cited
Cases

**Copyrights and Intellectual Property 99 ☞12(3)**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(A) Nature and Subject Matter
            99k12 Originality of Work; Creativity
                99k12(3) k. Compilations and Deriva-
tive Works; Copies and Reproductions. Most Cited
Cases
Under the Copyright Act, a creative work is entitled
to the most protection, followed by a derivative work,
and finally by a compilation. 17 U.S.C.A. § 101 et
seq.

**[9] Copyrights and Intellectual Property 99**
**☞64**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(I) Infringement
            99I(I)1 What Constitutes Infringement
                99k64 k. Pictorial, Graphic, and Sculp-
tural Works. Most Cited Cases
Floor-plan for four-bedroom house, with one bed-
room denominated as a "master" bedroom or suite, a
two-car garage, living room, dining room, "family"
room, foyer, "master" bathroom, kitchen, second
bathroom, and a porch/patio, was not substantially
similar to copyrighted floor-plan with same elements,
and thus did not infringe copyright; at the
level of protected expression, the differences between
the floor-plans were so significant that no reason-
able, properly instructed jury could have found the
works substantially similar. 17 U.S.C.A. § 101.

**\*916** Kelly J.H. Garcia and Virginia Bullerman Tow-
nes, Akerman Senterfitt, Orlando, FL, for Plaintiff-
Appellant.

554 F.3d 914                                                                                                    Page 3
554 F.3d 914, 2008 Copr.L.Dec. P 29,685, 89 U.S.P.Q.2d 1246, 21 Fla. L. Weekly Fed. C 1338
(Cite as: 554 F.3d 914)

Sidney M. Nowell, Nowell & Associates, P.A., Bunnell, FL, for Defendant-Appellee.

Appeal from the United States District Court for the Middle District of Florida.

Before BIRCH and DUBINA, Circuit Judges, and GOLDBERG,[FN*] Judge.

FN* Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

BIRCH, Circuit Judge:

In this copyright infringement action the appellant contends that the district court erred when it examined the two floor-plans at issue, and, emphasizing the differences between the two, concluded "that, as a matter of law, no reasonable fact-finder could conclude" that appellant's floor-plan ("The Kensington") was substantially similar to appellee's floor-plan ("The Westminister"). More specifically, appellant ("Intervest") argues that the district court employed a "heightened 'substantial similarly' standard" by itself focusing upon certain dissimilarities between the two floor-plans at issue,[FN1] based upon a misinterpretation of *Howard v. Sterchi*, 974 F.2d 1272 ( 11th Cir.1992). For the reasons that follow we find no error and AFFIRM the judgment of the district court.

FN1. The two floor-plans at issue are attached hereto as an appendix.

I. BACKGROUND

In point of time, the floor plan for The Westminister was created in 1992 as a work-made-for-hire by Intervest Construction, Inc. ("Intervest"). The putatively infringing floor-plan, The Kensington, was created in 2002 by Canterbury Estate Homes, Inc. ("Canterbury"). Each floor-plan depicts a four-bedroom house, with one bedroom being denominated as a "master" bedroom or suite. Each floor plan includes a: two-car garage; living room; dining room; "family" room; foyer; "master" bathroom; kitchen; second bathroom; nook; and porch/patio. Each floor-plan also reflects certain "elements" common to most houses: doors; windows; walls;

bathroom fixtures (toilet, tub, shower, and sink); kitchen fixtures (sink, counter, refrigerator, stovetop, and pantry/cabinets); utility rooms and fixtures (washer, dryer, and sink); and closets. A cursory examination of the two floor-plans reveals that the square footage of both is approximately the same. Also, as is common to houses, there are placements of entrances, exits, hallways, openings, and utilities (furnace, air conditioner, hot water heater, and telephone hardware).

After identifying all of these unassigned components and elements of the floor-plans, the district court undertook a careful comparative analysis of the selection, coordination, and arrangement of these common components and elements. The district court focused upon the dissimilarities in such coordination and arrangement:

First, Canterbury represents that the square footage of the rooms in the two *917 designs is different, and visual examination of the floor plans appears to confirm that. In any event, Intervest seemingly does not contest the point.

Second, the garage in The Westminister has a front entrance, while The Kensington's has a side entrance. Further, Intervest's design has an attic access from the garage, while Canterbury's version has a "bonus room" above the garage, something The Westminister lacks entirely. Moreover, the inside air conditioning unit and water heater are placed differently in the two floor plans. Additionally, The Kensington has two windows in the garage, while The Westminister has none. In The Westminister, there is a bedroom closet to the left of the utility room, whereas in The Kensington, there is a hallway in that location.

There are three bedrooms on the left side of the two designs, with a master bedroom across the house on the right side. (Confusingly, The Kensington drawing identifies the bedroom closest to the garage and the one farthest from the garage as "Bedroom 3.") There are significant differences between the left-side bedrooms in the two drawings.

The bedroom closest to the garage ("Bedroom 2" in The Westminister and one of two "Bedroom 3"'s in The Kensington) is shaped differently in the two designs. In The Westminister, this room's longest

EXHIBIT 6

554 F.3d 914                                                                              Page 4
554 F.3d 914, 2008 Copr.L.Dec. P 29,685, 89 U.S.P.Q.2d 1246, 21 Fla. L. Weekly Fed. C 1338
(Cite as: 554 F.3d 914)

wall abuts the garage, whereas in The Kensington, a shorter wall separates the room from the garage. Additionally, in The Westminster, one would enter this particular room straight through a door at the end of a hallway, whereas in The Kensington, one would have to turn 90 degrees off the hallway to enter the room. Additionally, the entrance doors swing in opposite directions in the two designs. Moreover, the closets in this bedroom are situated on completely different walls in the two drawings.

Regarding the middle bedroom on the left side ("Bedroom 3" in The Westminster and "Bedroom 2" in The Kensington), the entrances and closets are different in the two floor plans. The closet in The Westminster runs nearly the length of one wall, while the closet in The Kensington is deeper, smaller, and occupies only a corner of the bedroom. The room in The Westminster has a 45 degree entrance, beyond which is an angled wall (followed by the aforementioned long closet). The Kensington's counterpart room has a 90 degree entrance which opens flush against a 90 degree wall. Finally, the bedroom in The Westminster appears more rectangular overall than its counterpart in The Kensington.

Moving to the last left-side bedroom ("Bedroom 4" in The Westminster and the other "Bedroom 3" in The Kensington), the same differences identified regarding the preceding bedroom also exist regarding this room, except that the smaller closet in The Kensington is located near the room's entrance, rather than in a corner.

The hallway bathroom situated next to this bedroom is also different in the two designs. The bathroom in The Westminster appears larger. Additionally, the alignment of the right wall vis-a-vis the hallway wall is different in the two plans. Further, "the bathtubs face opposite ways in the two designs," "the bathroom sink counter space in [The Kensington] is much smaller than in [The Westminster]," and "[The Kensington's] sink is oval shaped whereas [The Westminster's] is round." Doc. 50 at 16. Finally, although the bathroom door leading to the exterior of the house swings in the same direction in both *918 plans, Canterbury notes that this is required by the fire code.

Proceeding to the center portion of the homes, the

nooks in the two **plans** are markedly different. In that regard,

[The Westminster's] nook feeds into a ninety degree angle adjacent to the Porch and has windows looking both to the outside and to the Porch. On the other hand, [The Kensington's] design is rounded into the porch and is completely made of glass. There is no window to the outside or into the Covered Patio. Moreover, the entrance from the Nook into the Living Room in [The Westminster's] design has an elongated wall which travels much further into the Living Room than in [The Kensington's] design, and also fails to break inward at a ninety degree angle like in [The Kensington's] design.

*Id.* at 17. Further, the shapes of the living rooms are different, in part due to the dissimilarities in the layout of the nooks.

The kitchens in the two **plans** are also substantially different. In that connection,

the wall placement in the southeast corner of the kitchens is significantly different. [The Kensington's] design pushes this wall further into the Living Room and pushes the Kitchen Counter much further north than in [The Westminster's] design. This allows [The Kensington's] design to have a much larger Pantry than [The Westminster's] design.

[Further, The Westminster's] design has a retractable door on its pantry which opens at a ninety degree angle while [The Kensington's] has a solid door which opens at a forty-five degree angle. Additionally, ... [The Kensington's] kitchen counter is much thinner and longer than [The Westminster's] which places the dishwasher in a different location. Finally, ... [The Kensington's] Kitchen has an Island as well as an entrance to a hallway running down the left side of the Utility Room while [The Westminster's] design has none of these features.

*Id.* at 17-18.

Moving to the right side of the house, there are material dissimilarities in the foyer, the master bed-

EXHIBIT 6

554 F.3d 914
554 F.3d 914, 2008 Copr.L.Dec. P 29,685, 89 U.S.P.Q.2d 1246, 21 Fla. L. Weekly Fed. C 1338
(Cite as: 554 F.3d 914)
Page 5

room, and the master bath. The front entrance to The Westminster "has one solid door with windows on either side while [The Kensington's] front entrance has a pair of glass French Doors." *Id.* at 18. Further, "the Master Bedroom in [The Kensington's] design contains glass French Doors on the far left side of the back wall which opens into a Covered Patio," whereas The Westminster "simply has a sliding glass door in the center of the back wall which opens to an uncovered Porch." *Id.* Additionally, in The Kensington's master bath, "the doors to the walk-in closets ... are solid and open in different directions than those [in the Westminster], which uses a retractable door." *Id.* Finally, the sinks in the master bath are placed differently in the two designs. In The Kensington, the sinks are centered; in The Westminster, they are not.

R1-69 at 5-8. (footnotes omitted).

Given the number of dissimilarities in the respective coordination and arrangement of these non-original, commonplace elements and components, the district court ruled that no reasonable observer could conclude that the copyrightable elements of the two floor-plans were substantially similar.

**\*919 II. DISCUSSION**

[1][2][3] Since we are dealing with a specific type of copyrightable work, here an architectural work, we begin by examining the statutory definition of an "architectural work," to wit: "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101 ( 2008). A review of the legislative history discloses that such "individual standard features" include "common windows, doors, and other staple building components." H.R.Rep. No. 101-735 (1990) *as reprinted in* 1990 U.S.C.C.A.N. 6935, 6949. Including the phrase "the arrangement and composition of spaces and elements in the design" demonstrates Congress' appreciation that "creativity in architecture frequently takes the form of a selection, coordination, or arrangement of unprotectible elements into an original, protectible whole." *Id.* Accordingly, while individual standard features and architectural elements classifiable as ideas or con-

cepts are not themselves copyrightable, an architect's original combination or arrangement of such elements may be. See *Corwin v. Walt Disney Co., 475 F.3d 1239, 1251 ( 11th Cir.2007).* Thus, the definition of an architectural work closely parallels that of a "compilation" under the statute, that is: "[A] work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. The Supreme Court in *Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991),* and our court in *BellSouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc., 999 F.2d 1436 ( 11th Cir.1993) (en banc)* and *Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218 ( 11th Cir. 2008),* indicated that the compiler's choices as to selection coordination, or arrangement or here, architectural work, that are even entitled to copyright protection. Accordingly, any similarity comparison of the works at issue here must be accomplished at the level of protected expression[FN2] that is, the *arrangement* and *coordination* of those common elements ("selected" by the market place, i.e., rooms, windows, doors, and "other staple building components"). In undertaking such a comparison it should be recalled that the copyright protection in a compilation is "thin." *Feist,* 499 U.S. at 349, 111 S.Ct. at 1289. Moreover, as the Second Circuit has noted, the substantial similarity inquiry is "narrowed" when dealing with a compilation. *Key Publications, Inc. v. Chinatown Today Publ'g Enter., Inc.,* 945 F.2d 509, 514 (2d Cir.1991).

FN2. The *Feist* Court further explained:

This protection is subject to an important limitation. The mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author.

*Feist* at 348, 111 S.Ct. at 1289.

[4][5][6][7][8] Thus, when viewed through the narrow lens of compilation analysis only the original, and thus protected arrangement and coordination of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT 6

554 F.3d 914                                                                                                      Page 6
554 F.3d 914, 2008 Copr.L.Dec. P 29,685, 89 U.S.P.Q.2d 1246, 21 Fla. L. Weekly Fed. C 1338
(Cite as: 554 F.3d 914)

spaces, elements and other staple building components should be compared.[FN1] We have recognized *920 that summary judgment may be inappropriate in certain types of copyright infringement cases. However, we have approved the use of summary judgment particularly in cases where: (1) because access has been established, the crucial issue is substantial similarity; (2) there may be substantial similarity with respect to the non-copyrightable elements of the two works compared; and, (3) as to the protectable elements, there is substantial dissimilarity. See *Oravec* 527 F.3d at 1223; *Beal v. Paramount Pictures, Corp.* 20 F.3d 454, 459-60 ( 11th Cir.1994). In fact, when the crucial question in a dispute involving compilations is substantial similarity at the level of protectable expression, it is often more reliably and accurately resolved in a summary judgment proceeding. This is so because a judge is better able to separate original expression from the non-original elements of a work where the copying of the latter is not protectable and the copying of the former is protectable. The judge understands the concept of the idea/expression dichotomy and how it should be applied in the context of the works before him. As we have observed: "This distinction-known as the idea/expression dichotomy-can be difficult to apply, as there is no bright line separating the ideas conveyed by a work from the specific expression of those ideas." *Oravec, 527 F.3d* at 1224. Moreover, in examining compilations wherein only the arrangement and coordination of elements which by the nature of the work (here architectural floor plans) are sure to be common to each of the works and are not copyrightable themselves (spatial depictions of rooms, doors, windows, walls, etc.), the already difficult tasks may become even more nuanced. Because a judge will more readily understand that all copying is not infringement, particularly in the context of works that are compilations, the "substantial-similarity" test is more often correctly administered by a judge rather than a jury-even one provided proper instruction. The reason for this is plain-the ability to separate protectable expression from non-protectable expression is, in reality, a question of law or, at the very least, a mixed question of law and fact. It is difficult for a juror, even properly instructed, to conclude, after looking at two works, that there is no infringement where, say, 90% of one is a copy of the other, but only 15% of the work is protectable expression that has not been copied. Part of the problem, which we have recognized, is that the term "substantial similarity" has not always been used with

precision. *Beal,* 20 F.3d at 459 n. 4. When courts have dealt with copyright infringement claims involving creative types of works, "substantial similarity" has been defined as existing "where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.* 684 F.2d 821, 829 ( 11th Cir.1982) (quotation marks and citation omitted) (the first copyright case decided by the **Eleventh Circuit** after its split-off *921 from the "old" Fifth Circuit involving a soft sculpture doll, a creative work that was to be later known as a "Cabbage Patch Kid"). However, as noted above, while a creative work is entitled to the most protection, a compilation is entitled to the least, narrowest or "thinnest" protection. See *Suntrust Bank v. Houghton Mifflin Co.,* 268 F.3d 1257, 1271 ( 11th Cir.2001); see also *Campbell v. Acuff-Rose Music, Inc.* 510 U.S. 569, 586, 114 S.Ct. 1164, 1175, 127 L.Ed.2d 500 (1994); *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 563, 105 S.Ct. 2218, 2232, 85 L.Ed.2d 588 (1985). Accordingly, when courts have examined copyright infringement claims involving compilations the definition of "substantial similarity" has been appropriately modified to accentuate the narrower scope of protection available, to wit:

> FN3. There are three types of work that are entitled to copyright protection-creative, derivative, and compiled. Copyrights in these three distinct works are known as creative, derivative, and compilation copyrights. An example of a creative work is a novel. An example of a derivative work is a screenplay based on a novel; it is called "derivative" because it is based on a preexisting work that has been recast, transformed, or adapted. An example of a compilation is [the floor plans at issue in this case.] The [Copyright] Act has created a hierarchy in terms of the protection afforded to these different types of copyrights. A creative work is entitled to the most protection, followed by a derivative work, and finally by a compilation. This is why the *Feist* Court emphasized that the copyright protection in a factual compilation is "thin."

*Warren Publishing, Inc. v. Microdos Data Corp.,* 115 F.3d 1509, 1515 n. 16 (

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT 6

554 F.3d 914                                                                                                    Page 7
554 F.3d 914, 2008 Copr.L.Dec. P 29,685, 89 U.S.P.Q.2d 1246, 21 Fla. L. Weekly Fed. C 1338
(Cite as: 554 F.3d 914)

11th Cir.1997) (citation omitted).

Not all copying constitutes infringement, however, see *Feist*, 499 U.S. at 361, 111 S.Ct. at 1296, and therefore we have emphasized that the substantial similarity analysis "must focus on similarity of expression, i.e., material susceptible of copyright protection." *Beal*, 20 F.3d at 459, n. 4; see also *Leigh [v. Warner Bros., Inc.*, 212 F.3d 1210] at 1214 (stating that a copyright plaintiff "must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work *with regard to its protected elements*"). *Oravec*, 527 F.3d at 1224 (emphasis in original) (involving a dispute over architectural **plans**); see also *BellSouth*, 999 F.2d 1436 (telephone directories); *Warren Publ'g, Inc.*, 115 F.3d 1509 (cable television fact books); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532 ( 11th Cir.1996) (computer code); *MiTek Holdings, Inc. v. Arce Eng'g, Inc.*, 89 F.3d 1548 ( 11th Cir.1996) (computer code); *Leigh*, 212 F.3d 1210 (photographs).

[9] Here the district court carefully compared the protectable aspects of the two floor-**plans** at issue, thus focusing only on the narrow arrangement and coordination of otherwise standard architectural features. At the conclusion of its analysis identifying many dissimilarities or differences in the two floor plans, the court made essentially the same ruling that we approved of in *Oravec*: "At the level of protected expression, the differences between the designs are so significant that no reasonable, properly instructed jury could find the works substantially similar." *Oravec*, 527 F.3d at 1227.

### III. CONCLUSION

Here the appellant, plaintiff below, contends that the district court erred in focusing its comparison of common architectural elements in two designs for a four-bedroom house on the dissimilarities between the two floor **plans**. Given that the plans at issue were protected by compilation copyrights which were "thin," the district court correctly determined that the differences in the protectable expression were so significant that, as a matter of law, no reasonable properly-instructed jury of lay observers could find the works substantially similar. Accordingly, the district court did not err in granting summary judgment to the appellee, the putative infringer.

AFFIRMED.

*922

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT 6

554 F.3d 914                                                                                                    Page 8
554 F.3d 914, 2008 Copr.L.Dec. P 29,685, 89 U.S.P.Q.2d 1246, 21 Fla. L. Weekly Fed. C 1338
(Cite as: 554 F.3d 914)

APPENDIX



The Westminster

APPENDIX



The Kensington

Intervest Const., Inc. v. Canterbury Estate Homes,
Inc.

C.A.11 (Fla.),2008.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT 6

554 F.3d 914                                                                                   Page 9
554 F.3d 914, 2008 Copr.L.Dec. P 29,685, 89 U.S.P.Q.2d 1246, 21 Fla. L. Weekly Fed. C 1338
**(Cite as: 554 F.3d 914)**


554 F.3d 914, 2008 Copr.L.Dec. P 29,685, 89
U.S.P.Q.2d 1246, 21 Fla. L. Weekly Fed. C 1338

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT 6